UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TIA HAZEL, individually, and on behalf of other members of the general public similarly situated;,

Plaintiff,

v.

COGIR MANAGEMENT USA INC., et al.,

Defendants.

No. 2:25-cv-03425-TLN-SCR

**ORDER**

This matter is before the Court on Plaintiff Tia Hazel's ("Plaintiff") Motion to Remand. (ECF No. 15.) Defendant Frontier Management LLC ("Defendant" or "Frontier") filed an opposition.[1] (ECF No. 22.) Plaintiff filed a reply. (ECF No. 24.) For the reasons set forth below, the Court DENIES the motion.

///

///

///

[1] Cogir Management USA Inc. ("Cogir") is also listed as a defendant in this action but does not join in the opposition. The Court refers to all defendants collectively as "Defendants."

## I. FACTUAL AND PROCEDURAL BACKGROUND

This wage-and-hour putative class action was filed by Plaintiff in Sacramento County Superior Court on August 7, 2025, on behalf of herself and others similarly situated. (ECF No. 4-1 at 2.) Plaintiff alleges various violations of state employment law. (*Id.*) Defendants removed the action to this Court on November 25, 2025, asserting this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). (ECF No. 1.) Plaintiff filed the instant motion on December 23, 2025, arguing that Defendants cannot demonstrate the $5,000,000 amount in controversy requirement is satisfied and that removal was untimely. (ECF No. 15.) The motion is fully briefed. (ECF Nos. 22, 24.)

## II. STANDARD OF LAW

A civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendant to federal court in the judicial district and division in which the state court action is pending. 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction over certain class actions only if: (1) the class has more than 100 members; (2) any member of the class is diverse from the defendant; and (3) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), (5)(B).

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and intended courts to interpret CAFA "expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). As a general rule, removal statutes are to be strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA."[2] *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Nonetheless, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

///

[2] Defendants correctly point out that Plaintiff misstates this presumption in the motion to remand. (ECF No. 22 at 10.) Plaintiff appears to concede this point on reply. (ECF No. 24 at 7 ("Defendant is correct that CAFA eliminates the anti-removal presumption . . . .").)

A defendant seeking removal under CAFA must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." *Dart Cherokee*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)). The notice of removal "need not contain evidentiary submissions," rather a defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" suffices. *Id.* at 84, 89. When "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. The parties may submit evidence outside the complaint including "affidavits or declarations or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908, at *2 (E.D. Cal. Oct. 7, 2020) (citation omitted).

When "the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and the underlying assumptions must be reasonable, and not constitute mere speculation and conjecture." *Id.* (citing *Ibarra*, 775 F.3d at 1197–99). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. Then "the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Dart Cherokee*, 574 U.S. at 89 (internal citation omitted).

## III. ANALYSIS

Plaintiff argues Defendant fails to submit competent, summary judgment-type evidence sufficient to satisfy the amount in controversy requirement under CAFA, Defendant's calculations rely on speculative assumptions, and the Notice of Removal was untimely.[3] (*See generally* ECF No. 15-1.) The Court will consider each of these arguments in turn.

---

[3] Plaintiff does not challenge any other prerequisite for federal jurisdiction. The Court recognizes that it "ha[s] an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party" but all other CAFA requirements appear to be satisfied at this time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).

A. Whether Defendant Submits Competent Summary Judgment-Type Evidence to Establish the Amount in Controversy

Plaintiff argues Defendant has not submitted competent, summary judgment-type evidence from which the Court could conclude the amount in controversy requirement is satisfied. (ECF No. 15-1 at 4–7.)

Defendant primarily relies on declarations submitted by Frontier's Chief People Officer, Hayley Rotenberg ("Rotenberg"), which describe calculations she conducted based on Frontier's personnel documents to estimate potential recovery for: (1) unpaid wages; (2) meal and rest break violations; (3) inaccurate wage statement claims; (4) waiting time penalty claims; and (5) incurred necessary business expenditure claims. (ECF Nos. 3, 23.) Defendant also includes attorney's fees in its estimate of potential recovery.[4] (ECF No. 22 at 23–25.) In total, Defendant estimates the amount in controversy is $10,216,576.25. (*Id.* at 25.)

The Court agrees with Defendant that the declarations are competent summary judgment-type evidence which can be used to satisfy the amount in controversy requirement, and it has accepted similar evidence in this context in the past. *See Kincaid v. Educ. Credit Mgmt. Corp.*, No. 2:21-CV-00863-TLN-JDP, 2022 WL 597158, at *2 (E.D. Cal. Feb. 28, 2022) (finding "courts have found this type of evidence to be sufficient for establishing the amount in controversy in similar cases" and citing cases). Rottenberg declares that, as Chief People Officer, she reviewed the relevant personnel records and conducted calculations based upon a statistical sample of putative class members during the period covered by Plaintiff's allegations. (ECF No. 23 at 2–3.) The Court finds the declarations lay a sufficient evidentiary foundation to constitute competent evidence. *See Kincaid*, 2022 WL 597158, at *2 ("Jahraus further declares that, in preparation for the declaration, she reviewed all relevant records.").

Therefore, the Court finds the declarations are competent summary judgment-type evidence which are appropriate for it to consider in evaluating whether the amount in controversy requirement is satisfied.

---

[4] As explained below, the Court need not consider attorney's fees as the amount in controversy requirement is satisfied by the underlying claims.

B. <u>Whether the Evidence Establishes $5 Million as the Amount in Controversy</u>

Plaintiff challenges Defendant's estimates of the amount in controversy as unreasonable for relying on speculative assumptions, as Defendant does not provide an evidentiary basis to apply its assumed violation rates to the entire putative class. (ECF No. 15-1 at 7–10.) Plaintiff also asserts Defendant's citations to the Complaint fail to justify these assumptions. *(Id.)* Defendant responds that Ninth Circuit precedent approves the use of assumptions as part of a chain of reasoning in CAFA amount-in-controversy calculations, and the resulting figures are not unreasonable simply because Defendant does not specify precisely why it chose the specific violation rates that it did. (ECF No. 22 at 12–13.) In reply, Plaintiff maintains that because Defendant does not explain the chain of reasoning which led to these assumptions, they must be rejected as unreasonable. (ECF No. 24 at 11 ("This fatal flaw permeates all of Defendant's assumed violation rates and without further explanation, the Court cannot conclude that such an assumption is reasonable.") (emphasis omitted).)

The Court concludes Defendant is correct and calculations are not unreasonable or speculative simply because they rely on assumptions. Plaintiff cites a number of district court cases which criticized and rejected amount-in-controversy estimates in CAFA wage-and-hour cases because the defendants did not explain their reasons for assuming a particular violation rate. (ECF No. 15-1 at 2, 7–10.) However, these cases predate the Ninth Circuit's decision in *Perez v. Rose Hills Co.* 131 F.4th 804 (9th Cir. 2025). There, the court explained that in this context "an assumption is not unreasonable simply because another equally valid assumption may exist." *Id.* at 809 (citing *Solar Energy Indus. Ass'n v. FERC*, 80 F.4th 956, 978–79 (9th Cir. 2023) ("A 55-mile-per-hour speed limit is not 'arbitrary' just because 50 miles per hour, or 60 miles per hour, would work equally well.")).

The Ninth Circuit has made clear that "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (quoting *Ibarra*, 775 F.3d at 1199). The contrary position would require the defendant to "prove it actually

violated the law at the assumed rate" when, presumably, it maintains it did not violate the law at all. *Id.* Indeed, even if the Court were to find the assumed rates to be unreasonable, it "should consider the claim under the better assumption — not just zero-out the claim." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022).

Accordingly, the Court proceeds to analyze each alleged violation and whether Defendant's estimates, including chains of reasoning based on assumptions, are reasonable.

*i. Unpaid Wage Claims*

Defendant argues $386,624[5] is in controversy for unpaid wage claims based upon the assumption of "30 minutes of off-the-clock work per semi-monthly pay period" paid at the California minimum wage rate of $14 an hour over 55,232 pay periods (0.5 hours x $14 x 55,232 pay periods). (ECF No. 22 at 17; ECF No. 23 at 3.) Defendant assumes liquidated damages for this claim in the amount of $251,461 (0.5 hours x 35,923 pay periods[6] x $14). (ECF No. 22 at 17.) Plaintiff disputes whether Defendant's assumed violation rate is reasonable because Defendant does not explain why it was chosen. (ECF No. 24 at 11.)

As explained above, Defendant is permitted to make assumptions in support of their calculations, which are not necessarily unreasonable simply because they could have chosen others. In assessing whether this assumed rate is reasonable, the Court looks to other decisions in this circuit, which have found higher estimates to be appropriate. *See, e.g.*, *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal Oct. 25, 2019) (stating an assumption of one hour of unpaid minimum wage per week was a "conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations"); *Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d

---

[5] The Court need not consider Defendant's alternative argument that $579,936 is in controversy if unpaid time is assumed to be paid at overtime rates (ECF No. 22 at 17), as the amount in controversy requirement is satisfied using the lower figure.

[6] It is not clear why Defendants use a lower number of pay periods to calculate this sum, particularly because liquidated damages are "in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2. Because the amount in controversy requirement is satisfied regardless, the discrepancy is immaterial.

968, 979 (E.D. Cal. 2023) (endorsing "an estimated one hour of unpaid minimum wages per week").

The Court will, accordingly, include $638,085 in its calculation of the amount in controversy.

*ii. Meal and Rest Break Claims*

Defendant estimates 10% of meal and rest break periods were noncompliant with California Labor Code §§ 226.7 and 512, which mandate a meal break during a shift of at least five hours and a rest break during every shift that lasts at least 3.5 hours. (ECF No. 22 at 17–18.) Rotenberg found in a statistical sample of 20% of the relevant pay periods that 95.7% had at least one shift which exceeded five hours, and 98.4% had at least one shift which exceeded 3.5 hours. (ECF No. 23 at 3–4.) Using these numbers, Defendant estimates potential recovery at $739,998.34 for meal break violations (.957 percentage of qualifying shifts x 55,232 pay periods x $14 hourly wage x 1 hour penalty per semimonthly pay period[7] = $739,998.336) and $721,516.03[8] for rest break violations for a total of $1,461,514.37.

Plaintiff challenges these estimates as speculative and unsupported by evidence. (ECF No. 24 at 11–13.) She also argues because meal periods can be waived by employees when they are between five and six hours, and because the sample is "self-selected" by Defendant, the resulting figures are not reliable. (*Id.*)

The Court is not persuaded by Plaintiff's suggestion that some employees may have waived their meal periods, or that the sample Rotenberg relied upon is unrepresentative, especially where Plaintiff has submitted no evidence whatsoever to dispute Defendants' estimates. *See Kincaid*, 2022 WL 597158, at *2 ("Based on the content of the Jahraus

---

[7] That is: one noncompliant meal break per two week period, or one noncompliant meal break every ten working days, which is 10% of the total.

[8] Defendant claims an amount in controversy of $721,516.03 for rest break violations, but this appears to be an inaccurate calculation of their own figures. Based on the records Defendant provided, the correct calculation should be run as follows: .984 percentage of qualifying shifts x 55,232 pay periods x $14 hourly wage x 1 hour penalty per semimonthly pay period = $760,876.032. The difference is ultimately immaterial as the amount in controversy requirement is satisfied even under the inaccurate figure.

Declaration — and in the absence of any evidence from Plaintiff to the contrary — the Court concludes it lays a sufficient evidentiary foundation to determine the amount in controversy.")

The Court has previously noted violation rates between 20% and 60% can be reasonable when the plaintiff alleges a "pattern and practice" of meal and rest period violations. *Sanchez v. Abbott Laboratories*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *4–5 (E.D. Cal. June 30, 2021) (noting "courts in the Ninth Circuit have frequently held a violation rate between 20% and 60% to be reasonable when the plaintiff claims a 'pattern and practice' of violations"); *Beckwith-Cohen v. VibrantCare Rehabilitation, Inc.*, No. 2:21-cv-01180-TLN-JDP, 2021 WL 5905956, at *4 (E.D. Cal. Dec. 14, 2021) (same).

The Court therefore finds the 10% violation rate relied upon by Defendants reasonable and includes $1,461,514.37 in its calculation of the amount in controversy.

*iii. Inaccurate Wage Statement Claims*

Defendant argues the allegations of inaccurate wage statements should be assessed at a 100% violation rate. (ECF No. 22 at 19–21.) This is a reasonable inference, in Defendant's view, because inaccurate wage statement penalties are assessed under California Labor Code § 226(e) if there is "a single minute of off-the-clock work or a single interrupted, late, or unauthorized meal or rest break in any pay period." (*Id.* at 19.) Plaintiff maintains a 100% violation rate is not a reasonable assumption because of the "limiting language" used in the Complaint — that is, the allegation of a "pattern and practice." (ECF No. 15-1 at 9.) Because the Complaint does not specifically allege a violation occurred in every pay period, Plaintiff urges the Court to reject Defendant's assumed violation rate as unsupported and speculative. (ECF No. 24 at 13–14.)

The Court agrees with Defendant that a 100% violation rate is appropriate under these circumstances. Plaintiff cites cases where the district court rejected such an assumption, reasoning the defendants had failed to submit sufficient evidence to support it. (ECF No. 24 at 13–14 (citing *Holcomb v. Weiser Sec. Servs., Inc.*, 424 F. Supp. 3d 840, 845 (C.D. Cal. 2019); *Vilitchai v. Ametek Programmable Power, Inc.*, No. 3: 15-CV-1957-L, 2017 WL 875595, at *3 (S.D. Cal. Mar. 6, 2017); *Beck v. Saint-Gobain Containers,* No. 2:16-cv-03638-CAS-SK, 2016

WL 4769716, at *9 (C.D. Cal. Sept. 12, 2016)).) *Vilitachi* and *Beck* predate *Arias*, in which the Ninth Circuit approved the practice of using assumptions to calculate the amount in controversy in a CAFA case. 936 F.3d at 927 ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven. . . ."). To the extent *Holcomb* can be read as holding to the contrary, the Court declines to follow it.[9] 424 F. Supp. 3d at 846. Additionally, *Holcomb* predates *Perez*, which held that under *Arias* it is error for a district court to "reject[ an] assumption because it [i]s not supported by evidence." 131 F.4th at 809.

Moreover, there is a relevant distinction between a 100% violation rate assumption for meal and rest break violations and such an assumption for inaccurate wage statement claims. The former assumption implies that the defendant failed to provide a meal or rest break during each and every qualifying shift, whereas the latter assumption implies only that the defendant failed to accurately state the employee's wages during the pay period. This would be the case if there was a single missed meal or rest break or any time worked which was not included in the semi-monthly pay statement. *See Serrieh*, 707 F. Supp. 3d at 978 ("The court finds a 100% violation rate to be appropriate here. As discussed previously, it is reasonable to assume weekly violations for both the meal and rest period claims."); *Gipson v. Champion Home Builders, Inc.*, No. 120CV00392DADSKO, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) ("As discussed above, the court found that it was reasonable to assume a 20% violation rate for both the meal period and rest period claims—i.e., that at least one violation occurred every week. It follows that plaintiff alleges that every wage statement was non-compliant.").

The Court has already accepted as reasonable the assumption that there was at least one such violation during each pay period — it therefore follows that a 100% violation rate for inaccurate wage statements is reasonable as well. Thus, the Court will include $766,600[10] in its

---

[9] The district court's order in *Holcomb* was issued on December 3, 2019, whereas the decision in *Arias* was issued three months earlier on September 3, 2019. *Holcomb*, 424 F. Supp. 3d 840; *Arias*, 936 F.3d 920. Despite this, *Holcomb* includes no discussion of *Arias*.

[10] Once again, it is not clear how Defendant calculates this figure. Under California Labor Code § 226(e), an employee suffering an inaccurate wage statement violation "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a

calculation of the amount in controversy.

*iv. Waiting Time Penalty Claims*

Defendant similarly argues the allegations of waiting time violations should be assessed at a 100% violation rate because of the systematic nature of the claims. (ECF No. 22 at 21–22.) Defendant cites the Complaint's allegation that "Plaintiff and the other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." (*Id.* at 22 (citing ECF No. 4-1 at 18).) Plaintiff responds that the Complaint alleges that employees were subject to different circumstances, and that Defendant cites no facts to support its assumptions. (ECF No. 24 at 14–15.)

Plaintiff's objections to Defendant's calculations are substantially similar to the arguments the Court has rejected above. Plaintiff has provided no additional convincing argument with respect to waiting time penalties, or evidence to dispute Defendant's figures. "Given [D]efendant's reasonable assumptions regarding the previously discussed violations, it is also 'reasonable to assume that all or nearly all employees in the class would be entitled to recovery of waiting time penalties.'" *Serrieh*, 707 F. Supp. 3d at 977 (quoting *Demaria v. Big Lots Stores - PNS, LLC*, No. 2:23-CV-00296-DJC-CKD, 2023 WL 6390151, at *7 (E.D. Cal. Sept. 29, 2023)); *see also Cavada v. Inter-Continental Hotels Grp.*, No. 19cv1675-GPC-BLM, 2019 WL 5677846, at *9 (S.D. Cal. Nov. 1, 2019). "After all, Defendant need only have . . . failed to remedy a single violation per employee for waiting time penalties to apply." *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. EDCV190839DOCSPX, 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019).

Thus, the Court includes $4,848,480 ($14 minimum wage rate x 8 hour workday x 30

---

violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Based on Defendant's figures this amount would come to $4,139,450 (for each of the 2,433 putative class members: $50 per initial pay period + $100 per each subsequent pay period up to $4,000, for 100% of the pay periods in the sample). (*See* ECF No. 23-2 (anonymized list of putative class members and number of pay periods)). As the amount in controversy is satisfied even assuming Defendant's lower figures, the discrepancy is, again, immaterial.

days x 100% of the 1,472 terminated putative class members with at least one meal or rest eligible shift) in its calculation for the amount in controversy.

*v. Necessary Business Expenditure Claims*

Relying on the Complaint's allegations that Defendant "intentionally and willfully failed to reimburse Plaintiff and the other class members for all necessary business-related expenses and costs," Defendant adds $5 per pay period to its calculation of the amount-in-controversy. (ECF No. 22 at 23.) Plaintiff once again challenges this assumption as speculative and unsupported. (ECF No. 24 at 18.)

The Court finds that $5 per pay period is a reasonable, conservative assumption given the broad language of the Complaint. *See, e.g.*, *Rombaut v. U.S. Concepts LLC*, No. 2:25-CV-02802-AB, 2025 WL 2044670, at *8 (C.D. Cal. July 18, 2025) ("Defendant uses an estimate of $20.00 per month to calculate all unreimbursed expenses owed to [p]laintiff and [c]lass [m]embers. Plaintiff challenges this estimate, arguing that the violation rate is unreliable due to [d]efendant's failure to provide adequate evidence or justification. . . . Plaintiff, meanwhile, does not offer an alternative figure. Considering all the arguments presented, the Court finds no basis to reject the $20.00 violation rate.") Thus, the Court includes $276,160 ($5 x 55,232 pay periods) in its calculation of the amount in controversy.

In total, the Court concludes that Defendant has shown, by a preponderance of the evidence, that at least $7,990,839.37 is in controversy in this case.

C. <u>Whether the Motion to Remand Was Timely Filed</u>

Plaintiff argues in the alternative,[11] even if the $5,000,000 amount-in-controversy requirement were satisfied, the Court should grant remand nevertheless because the Notice of Removal was untimely. (ECF No. 15-1 at 10.) Plaintiff claims the Complaint in the underlying state court action and her amended letter to the California Labor and Workforce Development

[11] Apparently taking issue with Defendant's claim that the motion to remand "concedes" the size of the putative class was sufficient to put Defendant on notice of the potential removability of this action, Plaintiff "directs the Court and Defendant's Counsel (in particular) to the Oxford Dictionary of Law definition of *arguendo*." (ECF No. 24 at 19.) The Court cautions Plaintiff's counsel that statements directed at opposing counsel personally are not appropriate in signed briefing before the Court.

Agency ("LWDA") put Defendant on notice of the removability of the case. (ECF No. 15-1 at 11); Cal. Lab. Code § 2699.3 (requiring that, before commencing civil litigation under the Private Attorneys General Act, an aggrieved employee "give written notice by online filing with the Labor and Workforce Development Agency and by certified mail to the employer of the specific provisions of this code alleged to have been violated"). Defendant contends that these documents are "indeterminate" on their face, and under Ninth Circuit precedent did not trigger the thirty-day time limit for removal under CAFA. (ECF No. 22 at 25–26.)

28 U.S.C. § 1446(b) requires:

> **b) Requirements; generally.—(1)** The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> . . .
>
> **(3)** Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(1)-(3)

In *Harris v. Bankers Life and Casualty Co.,* 425 F.3d 689, 693–94 (9th Cir.2005), the Ninth Circuit held that "notice of removability under [28 U.S.C.] § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." Later, the Ninth Circuit clarified that the removal statute does not prohibit "a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). When a pleading or "other paper" is "indeterminate," neither deadline is triggered and a defendant may file a notice of removal based upon its own subsequent investigation. *Id.*

Upon review of the state court complaint and LWDA letter, the Court agrees with Defendant that these documents were "indeterminate" and did not, on their face, provide them with notice of removability. The Complaint does not state any specific amount of recovery sought by the class, instead requesting general, special, and statutory damages for each cause of action and reasonable attorney's fees and prejudgment interest. (ECF No. 4-1 at 23–28.) Similarly, the LWDA letter demands "on behalf of all aggrieved employees . . . all applicable penalties arising out of the above-referenced wage, hour, and payroll practices, or which could be assessed and collected by the Labor and Workforce Development Agency, for violation of the California Labor Code." (ECF No. 15-2 at 35.) As in *Roth*, it was not until Defendant "consulted its own employment files to identify the potential class members" that it concluded the case was removable. 720 F.3d at 1125.

Because neither of the documents cited by Plaintiff were sufficient to trigger the removal deadline, the Court finds the motion to remand was timely filed.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Remand is DENIED. (ECF No. 15.)

IT IS SO ORDERED.

DATE: September 14, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE